USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _______________
DATE FILED: 11/24/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUAN GARCIA,

Petitioner,

-against-

UNITED STATES OF AMERICA,

Respondent.

1:13-cv-3040-GHW

MEMORANDUM OPINION AND ORDER

GREGORY H. WOODS, District Judge:

Petitioner Juan Garcia moves to vacate his sentence pursuant to 28 U.S.C. § 2255. Garcia also moves for an evidentiary hearing and for the appointment of counsel. The Court holds that Garcia's § 2255 motion was untimely filed more than one year after the date on which his judgment of conviction became final under § 2255(f)(1), and that Garcia has not established that the limitations period began to run on a later date. Accordingly, Garcia's § 2255 motion is denied as untimely. Garcia's motions for an evidentiary hearing and for the appointment of counsel are also denied, and a certificate of appealability will not issue.

## I. Background

### A. Offense Conduct

In December 2003, during a routine traffic stop, police discovered approximately 46 kilograms of cocaine and $18,000 in cash inside of a tractor trailer in Illinois. *See* May 26, 2005 Presentence Investigation Report ("PSR") ¶ 12. The driver, Jesus Dominguez was arrested and later agreed to cooperate with the Drug Enforcement Administration ("DEA"). *Id.* Dominguez admitted that he was transporting cocaine from California to New Jersey for Garcia and that, over the course of 12 to 15 trips, he had previously transported more than 1,000 kilograms of cocaine and approximately $20 million in drug proceeds for Garcia. *Id.* ¶¶ 12, 14. The DEA subsequently

obtained court-authorized wiretaps on cellular telephones used by Garcia and several other members of the drug trafficking organization in which he was involved (the "DTO"). *Id.* ¶ 15.

Garcia was arrested at his California residence in July 2004. *Id.* ¶ 20. At the time of his arrest, Garcia waived his *Miranda* rights and gave a post-arrest statement in which he admitted that he was responsible for coordinating the transportation of approximately 600 kilograms of cocaine and $11 million in drug proceeds between the East and West Coasts. *See* Dkt. No. 11, Declaration of Emil J. Bove III, Pt. 1 ("Bove Decl., Pt. 1"), Ex. A.

**B. Indictment, Discovery, Motion to Suppress, and Guilty Plea**

In September 2004, Garcia and four co-defendants were charged by superseding indictment with conspiring to distribute five kilograms and more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. That same month, the Government produced to Garcia's counsel, David Arredondo, discovery in the form of, *inter alia*, 16 wiretap applications and interception orders, 26 discs containing communications intercepted pursuant to those orders, and summaries of the intercepted communications. *See* Dkt. No. 11, Bove Decl., Pt. 1, Ex. B. The Government also provided copies of the discs containing intercepted communications to the Metropolitan Correctional Center so that Garcia could review them on his own. *See* Bove Decl, Pt. 1, Ex. C.

In January 2005, Garcia moved to suppress the wiretap communications intercepted by the Government. Garcia argued that the Government had not established the wiretaps were necessary because it had failed to disclose the existence of an individual named Jose Parra, who was purportedly both a high-level member of the DTO and a confidential informant. *See* Bove Decl., Pt. 1, Ex. D. In an affidavit filed in support of the motion, Arredondo described the basis for his belief that Parra was both a member of the DTO and a confidential informant. *See* Dkt. No. 12, Declaration of Emil J. Bove III, Pt. 2 ("Bove Decl., Pt. 2"), Ex. E.

In March 2005, this Court denied Garcia's motion to suppress. The Court found that Garcia's theory that Parra had been acting as a confidential informant "lack[ed] any evidentiary support and [was] impermissibly based upon conjecture without personal knowledge." *United States v. Garcia*, No. 04 CR. 603(HB), 2005 WL 589627, at *12 (S.D.N.Y. Mar. 14, 2005).

That same month, Garcia pled guilty, without a plea agreement, to conspiring to distribute five kilograms and more of cocaine. *See* Bove Decl, Pt. 2, Ex. F.

**C. Trial of Garcia's Co-Defendants**

In May 2005, three of Garcia's co-defendants were convicted of the same offense as Garcia following a jury trial. The Government's case-in-chief included numerous calls intercepted during the course of its investigation—including calls involving Garcia—as well as testimony regarding those calls. As relevant to this case, Special Agent Michael Keuler of the DEA testified regarding an intercepted call involving Garcia that occurred on May 13, 2004. *See* Dkt. No. 13, Declaration of Emil J. Bove III, Pt. 3 ("Bove Decl., Pt. 3"), Ex. G at 552-613. During the call, Garcia and an individual whom he variously referred to as "Joe," "Joey," and "Jose" appeared to discuss a debt that a third person owed to the DTO as a result of his being supplied with cocaine. *See id.*; *see also* Dkt. No. 14, Declaration of Emil J. Bove III, Pt. 4 ("Bove Decl., Pt. 4"), Ex. J (transcript of May 13, 2004 call).

**D. Sentencing**

In Garcia's PSR, the Probation Office determined that Garcia's offense involved more than 150 kilograms of cocaine, which corresponded to a base offense level of 38 under U.S.S.G. § 2D1.1(c)(1). *See* PSR ¶ 22. The Probation Office also determined that Garcia was an organizer or leader of criminal activity involving five or more participants, thus warranting a four-level increase pursuant to U.S.S.G. § 3B1.1(a). *Id.* ¶ 25. After subtracting three levels for acceptance of

responsibility, the Probation Office calculated a Guidelines range of 292 to 365 months' imprisonment based on a total offense level of 39 and a Criminal History Category of II. *Id.* ¶ 63.

At sentencing in July 2005, Mr. Arredondo confirmed that he had no objections to the facts as described in the PSR. *See* Bove Decl., Pt. 4, Ex. M at 9. Mr. Arredondo objected, however, to the application of a four-level leadership enhancement. *See id.* at 11-12, 14-16, 19. While conceding that Garcia "did exercise the aspect of the venture having to do with the transportation," *id.* at 11, Mr. Arredondo asserted that Garcia was "not the owner of the drugs" and that he "participated in one small aspect" of the conspiracy, *id.* at 11, 19. In response to this argument, the Government referred to, *inter alia*, the "numerous wiretaps [the Court] heard [at the trial of Garcia's co-defendants], many of which involved the voice of . . . Garcia directing those subordinate to him . . . in the movement of cocaine." *Id.* at 23.

After the Court asked Arredondo whether Garcia had offered to participate in a proffer with the Government, the following exchange occurred:

> MR. ARREDONDO: It was never—no. There was never any offer of a proffer in this.
>
> THE COURT: Did you ever call [the Government] up and say . . . , we have a lot to tell you and we're ready to come by now?
>
> . . .
>
> MR. ARREDONDO: No, I never did that, [Y]our Honor. . . . [I]f you recall, we made a motion in this Court and we could not sustain it, to look at the affidavits in support of the wiretaps. It was our belief that the big guy who was the actual informant in this case—
>
> THE COURT: He's [*i.e.*, Garcia is] the big guy.

*Id.* at 19-20. The Government responded to Arredondo's implicit reference to Parra as follows:

> I will start with this name, Jose Parra, which seems to keep surfacing but really only from Mr. Arredondo's mouth. This name was never mentioned at trial, as best I can remember. No case agents have ever heard of this individual. . . . [T]here was never any instruction not to mention a Jose Parra name. The name is unknown to me. It seems what they're trying to do is to create this imaginary individual who is the big

> kingpin whereas, in reality, the two kingpins are sitting right behind me. They [*i.e.*, Garcia and co-defendant Jose Fernando Salinas Garcia], [Y]our Honor, were the two biggest cocaine transporters from this organization that were in the United States.

*Id.* at 22.

In imposing its sentence, the Court adopted the 292-to-365-month Guidelines range as calculated in the PSR. *Id.* at 27. In applying a four-level leadership enhancement, the Court reasoned as follows:

> And the role that provides the additional four offense levels seems to me that it really was, as the government points out—and if you know anything about me you will know that I don't always agree with the government—but in this instance, I think probably if there was a leader that's here, you and your co-defendant [Salinas Garcia] are it.

*Id.*; *see also id.* at 26-27 ("[T]here was so much testimony about . . . the trips that the informant [Dominguez] took, clearly in my view, at your overall instruction . . . ."). Ultimately, the Court sentenced Garcia principally to 292 months' imprisonment. *Id.* at 27.

**E. Direct Appeal**

On appeal, Garcia argued only that the Court violated his rights under the Confrontation Clause by considering testimony from the trial of his co-defendants at sentencing, and that the Court erroneously based his sentence on a fact—that his offense involved more than 150 kilograms of cocaine—that was neither admitted by him during his plea allocution nor proven beyond a reasonable doubt at trial. *See United States v. Garcia*, 167 F.App'x 259, 260-61 (2d Cir. 2006). On February 15, 2006, the Second Circuit rejected these arguments based on well-established precedent and affirmed Garcia's judgment of conviction. *Id.*

**F. Garcia's § 2255 Motion**

On April 28, 2013, Garcia, proceeding *pro se*, filed the instant § 2255 motion. *See* Doc. 1. In his motion, Garcia asserts that the Government committed misconduct at his sentencing hearing by falsely disputing the existence of Parra and falsely accusing Garcia of fabricating Parra's existence. *See id.*, Memorandum of Law ("Garcia Mem.") at 41-48. Relatedly, Garcia claims that his due

process rights were violated because his sentence was based on materially false information; namely, that Parra, the purported leader of the DTO, did not exist. *Id.* at 49-55. Finally, Garcia contends that the Government violated its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose information concerning Parra's existence and role in the DTO.[1] *Id.* at 56-59.

In May 2013, the Court ordered Garcia to show cause as to why his motion should not be dismissed as time-barred under 28 U.S.C. § 2255(f). *See* Doc. 3. In response, Garcia argues that his motion is timely under § 2255(f)(4), *see* S.D.N.Y. No. 04-cr-603, Doc. 178 ("Show Cause Response"), pursuant to which the applicable one-year limitations period begins to run "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence," 28 U.S.C. § 2255(f)(4). In the context of this argument, Garcia contends that Parra was murdered in December 2011 and relies on various newspaper articles describing that murder and purportedly indicating that it was drug-related. *See* Show Cause Response at 10; Garcia Mem. at 39; S.D.N.Y. No. 04-cr-603, Doc. 177 ("Suppl. to Show Cause Response"), Exs. A-C. Garcia asserts that "[i]t was only after Parra was killed in December 2011 that [Garcia] learned of information through media accounts that led [him] to suspect that [the prosecutor] may have misrepresented the facts in connection with [Garcia's] sentencing." Show Cause Response at 10. Garcia also relies on the above testimony of Agent Keuler from the April 2005 trial of Garcia's co-defendants, which, according to Garcia, demonstrates both that Parra exists and that he was the leader of the DTO. *Id.* at 11. Garcia states that he ordered the transcripts containing Keuler's testimony only after discovering that Parra had been murdered in December 2011, and that he first received those transcripts on April 30, 2012. *Id.*

[1] Although Garcia maintains that Parra was acting as both the leader of the DTO and a confidential informant, *see, e.g., id.* at 48 n.**, he does not reiterate the argument raised in his January 2005 motion to suppress pertaining to the necessity of the Government's wiretaps in this case. The purported fact that Parra was a confidential informant thus is not directly relevant to Garcia's claims.

Garcia further argues that his motion is timely under § 2255(f)(2), *id.* at 1, pursuant to which the one-year limitations period begins to run "the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action," 28 U.S.C. § 2255(f)(2). According to Garcia, the Government created an impediment to his filing the instant motion by falsely representing at his sentencing hearing that Parra did not exist. *See* Show Cause Response at 11-12. Garcia requests that the Court hold an evidentiary hearing to resolve any disputed factual issues relevant to the timeliness of his § 2255 motion. *Id.* at 12; *see also* Doc. 7 (separate motion for an evidentiary hearing filed by Garcia on August 13, 2013); S.D.N.Y. No. 04-cr-603, Doc. 180 (separate motion for an evidentiary hearing filed by Garcia on July 22, 2013).

In response to this Court's order to show cause, Garcia has also filed a declaration drafted by Mr. Arredondo, Garcia's former counsel. *See* Doc. 5 ("Arredondo Decl."). Mr. Arredondo affirms, in relevant part, that "the recent death by murder of an individual by the name of Jose Parra removes any impediment to discovery of his role and participation in the offense [Garcia] pled guilty to," and that "[a]ll efforts by [Garcia] to discover Parra's role in the offense at the time of the prosecution of this case were stymied and prevented by government denials of Parra's participation, or even of his existence." *Id.* ¶ 5. Mr. Arredondo otherwise describes the basis for his belief that Parra was acting as a confidential informant in this case, as he did in the affidavit that he filed in support of Garcia's January 2005 motion to suppress. *See id.* at ¶¶ 6-15, 23-29.

In opposition to Garcia's § 2255 motion, the Government argues that the motion was untimely filed more than one year after Garcia's conviction became final, and that Garcia's attempts to establish that the limitations period began to run on a later date are unavailing. The Government separately argues that Garcia's claims are unexhausted and procedurally defaulted and, in any event, are meritless. *See* Doc. 10.

In addition to filing a reply in support of his motion, *see* Doc. 17, Garcia has filed a series of letters apprising the Court of various developments purportedly relevant to his claims. In September 2013, Garcia filed a letter stating that he had been interviewed by a detective investigating Parra's murder. *See* Doc. 8. According to Garcia, during the interview, he positively identified a photograph of the murder victim as Parra, and the detective acknowledged that "Parra was a major cocaine trafficker whose drug operation had been based in the Los Angeles area." *Id.*

In January 2014, Garcia filed a letter in which he asserted that Johann Moreno, a purported customer of the DTO, had been acting as a confidential informant for the Government, and that Moreno had likely provided information confirming Parra's existence and status as the leader of the DTO. *See* Doc. 18. Garcia requested that the Court stay decision on his § 2255 motion in order to give him an opportunity to receive and review certain materials that could corroborate this assertion. *Id.* In a responsive letter, the Government represented that Moreno pled guilty to conspiring to distribute cocaine in February 2006, that Moreno had previously made certain post-arrest statements relevant to his offense conduct, and that Moreno participated in at least two proffer sessions with the Government after pleading guilty. The Government, however, was unable to locate any notes relating to those proffer sessions and denied that Moreno ever acted as a confidential informant or cooperating witness. *See* Doc. 19, 21.

In March 2014, while expressing doubt as to the usefulness of a stay, the Court nonetheless granted Garcia's stay request and held his § 2255 motion in abeyance until April 15, 2014. *See* Doc. 22. Garcia did not thereafter supplement his motion with evidence corroborating his assertions regarding Moreno.

Finally, in April 2014, Garcia filed a letter in which he requested that the Court appoint counsel for the purpose of interviewing Moreno to determine whether he proffered any information related to Parra. *See* Doc. 23.

## II. Analysis

A motion challenging a conviction or sentence under 28 U.S.C. § 2255 is subject to a one-year limitations period that begins to run on the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Here, the Second Circuit affirmed Garcia's judgment of conviction on February 15, 2006, and that judgment became final 90 days later on May 16, 2006, when the time limit for filing a petition for certiorari expired. *See Clay v. United States*, 537 U.S. 522, 527 (2003); 28 U.S.C. § 2101(c). Garcia filed his § 2255 motion almost seven years later, on April 28, 2013. Garcia's motion is thus untimely under § 2255(f)(1).

With respect to Garcia's reliance on § 2255(f)(4), the parallel provision of the statute of limitations governing § 2254 petitions—which begins to run "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence," 28 U.S.C. § 2244(d)(1)(D)—has been interpreted by the Second Circuit as follows:

> The determination of the date on which the factual predicate for a habeas claim is first discoverable is a "fact-specific" inquiry which requires a district court to analyze the factual bases of each claim and to determine when the facts underlying the claim were known, or could with due diligence have been discovered. . . . Those courts that have given meaning to the term agree that a factual predicate consists only of the "vital facts" underlying the claim. We agree. The facts vital to a habeas claim are those without which the claim would necessarily be dismissed under Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (requiring a district judge to dismiss a petition "[i]f it plainly appears from the petition and any attached exhibits

> that the petitioner is not entitled to relief") or Rule 12(b)(6) of the Federal Rules of Civil Procedure (allowing for dismissal of a civil complaint where the plaintiff has "fail[ed] to state a claim upon which relief can be granted"). . . . Accordingly, if new information is discovered that merely supports or strengthens a claim that could have been properly stated without the discovery, that information is not a "factual predicate" for purposes of triggering the statute of limitations under § 2244(d)(1)(D).

*Rivas v. Fischer*, 687 F.3d 514, 534-35 (2d Cir. 2012) (citations omitted);[2] *see also Lucidore v. New York State Div. of Parole*, No. 99 Civ. 2936 AJP, 1999 WL 566362, at *5 (S.D.N.Y. Aug. 3, 1999) (stating that the limitations period "runs from the date a petitioner is on notice of the facts which would support a claim, not from the date on which the petitioner has in his possession evidence to support his claim" (internal quotation marks omitted)), *aff'd*, 209 F.3d 107 (2d Cir. 2000); *Escamilla v. Jungwirth*, 426 F.3d 868, 871 (7th Cir. 2005) ("Section 2244(d)(1)(D) does not restart the time when corroborating evidence becomes available; if it did, then the statute of limitations would fail in its purpose to bring finality to criminal judgments, for any prisoner could reopen the judgment by locating any additional fact. As a matter of law, new evidence supporting a claim actually made at or before trial cannot form the basis of a new period under § 2244(d)(1)(D)."), *abrogated on other grounds in McQuiggin v. Perkins*, 133 S. Ct. 1924 (2013).

In this case, the sole "vital fact" or purported fact underlying each of Garcia's claims is that Parra was the leader of the DTO. Garcia was demonstrably aware of this purported fact when he was sentenced in July 2005, and was presumably aware of it as early as 2003 as a result of his own participation in the DTO. Indeed, Garcia himself was a participant in the telephone call intercepted in May 2004 which he alleges demonstrates that Parra was the leader of the DTO. *See* Show Cause Response at 11; Bove Decl., Pt. 4, Ex. J. Furthermore, in Garcia's own words, "[t]hroughout the

---

[2] While addressing § 2244(d)(1)(D), the Court considers the Second Circuit's decision in *Rivas* to be instructive, if not binding, in interpreting § 2255(f)(4), as there are no material differences between the two statutory provisions at issue. *See Littlejohn v. Artuz*, 271 F.3d 360, 363 n.2 (2d Cir. 2001) ("[S]ections 2254 and 2255 are generally seen as *in pari materia* and therefore the reasoning of [cases] in the context of § 2255 petitions applies equally to § 2254 petitions." (internal quotation marks omitted)).

course of the underlying criminal proceedings, [he] . . . maintained that he worked for a man named Jose Parra," whom Garcia "identified as the head of the [DTO]." Garcia Mem. at 42. Specifically, in his January 2005 motion to suppress, Garcia asserted that that Parra was both a confidential informant and "an integral part of the [DTO]," Bove Decl., Pt. 1, Ex. D at 4, and his former counsel Mr. Arredondo submitted a factual affidavit in support of these assertions, *see* Bove Decl., Pt. 2, Ex. E. Additionally, at Garcia's July 2005 sentencing hearing, Mr. Arredondo contended that Parra was "the big guy" in the DTO.[3] *See* Bove Decl, Pt. 4, Ex. M at 20.

Garcia effectively argues that he could not have discovered the facts supporting his claims until either Parra was murdered in December 2011 or Garcia received the trial transcripts from the trial of his co-defendants in April 2012. This argument, however, conflates the facts underlying his claims with evidence that purportedly supports those facts. The trial transcripts from the trial of Garcia's co-defendants and articles purportedly indicating that Parra was killed in a drug-related homicide are, at best, evidence probative of a purported fact that Garcia was aware of when he was sentenced in July 2005—that Parra was the leader of the DTO. Discovery of such evidence does not trigger the limitations period under § 2255(f)(4). *Cf. Rivas*, 687 F.3d at 535.

In any event, Garcia's argument fails for at least three additional reasons. First, the portion of the trial transcripts on which Garcia relies involves Agent Keuler's testimony about a May 2004 phone call in which Garcia himself was a participant. Moreover, in complying with its discovery obligations in mid-2004, the Government provided to Garcia and his former counsel both a recording of that May 2004 call and a summary of it. *See* Bove Decl., Pt. 1, Exs. B-C. Agent Keuler's testimony thus should not have revealed any new facts to Garcia. Second, even if Agent Keuler's testimony somehow revealed new facts to Garcia, he fails to sufficiently justify the seven-

---

[3] Garcia nonetheless declined to participate in proffer sessions with the Government, during which he could have provided information about Parra and his purported leadership role in the DTO. *See* Bove Decl., Pt. 4, Ex. M at 19-20; Garcia Mem. at 16.

year delay between the trial of his co-defendants in early 2005 and his requesting the trial transcripts in early 2012. *See, e.g., Atkins v. Gonyea*, 2014 WL 199513, at *2 (S.D.N.Y. Jan. 17, 2014) ("The relevant inquiry is not when the petitioner actually discovered the facts, but when he could have discovered them with due diligence." (citing *Wims v. United States*, 225 F.3d 186, 190 (2d Cir. 2000)). While Garcia suggests that he was deceived by the prosecutor's purported misrepresentation at sentencing that Parra did not exist, *see, e.g.,* Show Cause Response at 7-9, Garcia had already expressly adopted a contrary position at that point in the proceedings, and could not have been deceived by a representation he believed to be false.[4]

Third, the evidence at issue either does not support Garcia's claims or only weakly supports them. Agent Keuler's testimony pertained to a telephone conversation between Garcia and an individual variously identified as to as "Joe," "Joey," and "Jose"—but never identified as Jose Parra—related to a debt that a third person (Moreno) owed to the DTO. *See* Bove Decl., Pt. 3, Ex. G at 552-613 (Keuler testimony); Bove Decl., Pt. 4, Ex. J (call transcript). This testimony does not demonstrate that Parra was the leader of the DTO or even that Parra existed.[5] The newspaper articles provided by Garcia provide evidence that Parra (or an individual with the same name) existed and was murdered in Los Angeles in December 2011. *See* Suppl. to Show Cause Response, Exs. A-C. But even if the manner in which Parra was murdered suggests that he had acted a confidential informant, *see, e.g.,* Arredondo Decl. ¶ 28 (asserting that "Parra's murder has all the earmarks of an execution, meant to exact revenge or send a message—a fate typically met by illegal

---

[4] Although Garcia has not raised this issue, he cannot establish that the one-year limitations period should be equitably tolled for similar reasons. *See, e.g., Holland v. Florida*, 560 U.S. 631, 649 (2010) (noting that a habeas petitioner "is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing" (internal quotation marks omitted)).

[5] Garcia also references the testimony of Special Agent Amador Martinez regarding an intercepted call between co-defendant Salinas Garcia and an individual identified as "Chepito." *See, e.g.,* Garcia Mem. at 27, 27 n.**. Contrary to Garcia's assertion, however, there is no indication in the record that Chepito was Parra.

drug informants"), there is no indication in these articles that Parra was the leader or even a member of the DTO.

For similar reasons, the more recent developments that have occurred in this case also do not provide a basis for accruing the limitations period under § 2255(f)(4). To the extent the detective investigating Parra's murder acknowledged that Parra was involved in drug trafficking, *see* Doc. 8, this is "information . . . that merely supports or strengthens a claim that could have been properly stated without the [information]." *Rivas*, 687 F.3d at 535. The discovery of such information does not trigger the limitations period under § 2255(f)(4). *Cf. id.* To the extent that Moreno may have provided information to the Government about Parra, *see* Doc. 18, there is no indication that Moreno in fact provided such information. Moreover, appointing Garcia counsel for the purpose of interviewing Moreno is not warranted, since Garcia seeks information from Moreno for the sole purpose of corroborating facts about Parra that Garcia was aware of throughout his entire criminal prosecution. Garcia's § 2255 motion thus is not timely under § 2255(f)(4).

Finally, Garcia has not established that unlawful government action prevented him from filing a § 2255 motion earlier under § 2255(f)(2). Even assuming, *arguendo*, that the prosecutor's suggestion at Garcia's sentencing hearing that Parra did not exist was somehow unlawful, this suggestion did not prevent Garcia from timely raising the instant claims for the reasons already indicated. The Court rejects as baseless Mr. Arredondo's assertion that "[a]ll efforts by [Garcia] to discover Parra's role in the offense at the time of the prosecution of this case were stymied and prevented by government denials of Parra's . . . existence." Arredondo Aff. ¶ 5. Although the Government did deny Parra's existence, it did not thereby prevent Garcia from attempting to obtain information about Parra's role in the offense.

Accordingly, Garcia's § 2255 motion is untimely under § 2255(f)(1), and his attempts to establish a later accrual date under § 2255(f)(2) and (4) are unavailing. Because the Court was not

required to resolve any disputed issues of fact is reaching this conclusion, an evidentiary hearing is not warranted.

## III. Conclusion

For the foregoing reasons, Garcia's § 2255 motion is denied as untimely. Garcia's motions for an evidentiary hearing and to appoint counsel are also denied. Because "jurists of reason would [not] find it debatable" that Garcia's § 2255 motion is untimely, the Court declines to issue a certificate of appealability under 28 U.S.C. § 2253. *See Slack v. McDaniel*, 529 U.S. 473, 483 (2000). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438, 445 (1962). The Clerk of Court is instructed to enter judgment accordingly and to close this case.

SO ORDERED.

Dated: November 24, 2014
New York, New York

GREGORY H. WOODS
United States District Judge